22-5703, Derek Lostutter v. Commonwealth of Kentucky et al., Court argument not to exceed 15 minutes per side. Mr. Sherman for the appellants. Mr. Sherman, you have three minutes for rebuttal. Yes, that's correct, Your Honor. Thank you, Your Honor. May it please the Court, John Sherman, for the appellants. The District Court made two errors in dismissing plaintiff's complaint. First, the District Court applied a highly formalistic analysis and erroneously conflated voting rights restoration and pardons in deciding that the First Amendment unfettered discretion doctrine had no application here. Second, having reached the constitutional merits of plaintiff's claims, the Court then impermissibly backtracked and disposed of the case on jurisdictional grounds. I'll first address the jurisdictional error, and I think I can do that quickly. Steel Company v. Citizens for a Better Environment and Bell v. Hood, both Supreme Court presidents, have both decided that where the standing and the merits are intertwined, it's impermissible for the Court to reach the merits, decide the merits, and then recast that determination as a jurisdictional ruling. In this case, the Court necessarily reached the merits of the First Amendment claims in the case, but then recast that determination as a lack of standing and dismissed the case for lack of standing. This Court, as well, in CHKRS just two years ago, found that this was impermissible. Again, that has to be the rule because otherwise, every time a plaintiff lost a claim, it would be dismissed for lack of standing rather than for failure to state a claim. And neither the District Court nor Governor Beshear makes an argument that our claims are wholly frivolous, insubstantial, or immaterial, such that they would fall within the narrow exception in Steel Company. And the Governor's brief actually ignores Steel Company and Bell v. Hood altogether. So having addressed the jurisdictional error, if there are no questions from the bench on that we do that at every stage of the case. So why is it that your clients, your three remaining clients, have standing? Thank you, Your Honor. Under the Supreme Court's precedent and this Court's precedent in cases like Prime Media and Miller v. City of Cincinnati, there is per se standing under the First Amendment unfettered discretion doctrine where a licensing scheme governing First Amendment protected expressive conduct contains no rules or criteria to constrain official discretion. That's the case here. Functionally, Kentucky's voting rights restoration system operates as a licensing scheme. There are no rules, no criteria whatsoever. And the Supreme Court has said, with a facial challenge, plaintiffs may facially challenge such a scheme without first applying for and being denied that permit. That's City of Lakewood. The individual facts of any permit application are not relevant. And the dispositive, the linchpin is really whether there's anything in the ordinance or statute in the laws that prevents viewpoint discrimination. Here there is none. And so facially, plaintiffs can bring a facial challenge and have standing to bring that facial challenge. Counsel, do you do you concede that everything depends upon characterizing this scheme as a license? That is a threshold question. It is one that, yes, we need to win, Your Honor, in order for the First Amendment unfettered discretion doctrine to apply. And we believe that a formalistic approach, and that would be consistent with recent rulings from this court in Ostergren v. Frick from 2021, as well as Novak v. City of Parma. These cases apply to functional analysis to the question of whether an administrative order created a prior restraint in those cases. Here we believe this case also calls for a functional analysis to be applied as to whether an administrative licensing scheme has been created. And here a plaintiff, all of our plaintiffs, are required to submit an application to the first of the Department of Corrections. And then if it has passed this threshold eligibility, it's referred to the governor's office. And then the governor's office has complete and unfettered discretion to grant or deny permission to engage in First Amendment protected expressive conduct voting. So why is voting First Amendment expressive conduct? Isn't it governed, if at all, by the 14th Amendment? Well, there are numerous Supreme Court cases that say that voting is protected as both expressive conduct and as a means for political association. Oh, association is different. I mean, association, that's different. Correct, Your Honor. But we claim that it's protected as both. But even just sticking with political expression, there are numerous cases from Norman v. Reed to Anderson v. Celebrezzi, Williams v. Rhodes, that make clear that it's not just the candidates or the political party's First Amendment interest in accessing the ballot, but also the voters' expressive interest in being able, both individually and in the aggregate, being able to express their preference for the ballot. What's the best case that says voting, that says that the right to vote, formally the right to go in the ballot box and check your ballot, is First Amendment protected activity? Norman v. Reed is one of the best. Everything in the Anderson verdict line of cases, a lot of these cases deal with voting, and they are dealing with it under both the First and First Amendment. We'd also point to the Supreme Court's decision in Doe v. Reed. The fact that there was a legal effect to the political expression in Doe v. Reed didn't negate the expressive character of the petition signatures in that case. Similarly here, just because voting has a legal effect in casting a ballot, it doesn't negate the expressive content of casting a vote. Petition signatures is about getting on the ballot, and those cases seem to be fairly clear, but actually an individual's voting is distinct from getting a candidate on the ballot. Correct, Your Honor, but there are numerous cases that... He murdered them. I mean, Council, isn't it particular that casting the ballot itself isn't expressive because nobody knows how it comes out? In fact, if anything, the anti-selfie ballot laws are a sign that the law wants to make sure that the voting isn't expressive. Thank you, Judge Boggs. I would point to two things in response to that question. One, McIntyre v. Ohio Election Commission, right? The anonymity of speech does not negate the expressive content of that speech. In that case, the Supreme Court struck down Ohio's ban. Those petitions. Anonymous pamphlets in that case. That's anonymous speech, but again, people knew that somebody was saying it. Okay, if I could take you back one step just procedurally. So, after your standing argument, if we accept that, is there any problem with our going forward and either ruling in your favor or against you on the merits? No, Your Honor. We believe that the District Court has already essentially ruled on the merits. The first paragraph of its order seemed to believe that the court was ruling on the merits. And then once given that it was ruling on the merits below, we think it's permissible for this court to reach the merits. And on the merits, we believe the First Amendment on federal discretion... You want to win, but if we decided that you lost on the merits, that wouldn't be procedurally improper in your view. No, Your Honor. Indeed, we believe Steele Company and Bell v. Hood instruct that this court should reach the merits because that's what the court effectively did and then backtracked to lack of standing. So, on the merits holding, and we've already rehearsed the Supreme Court's decisions regarding... Let's go back to the standing issue. I guess one of your three clients has applied for a pardon? Two have actually applied for voting rights restoration. We obviously dispute that voting rights restoration is just one of the effects of a pardon, but it is not itself a pardon. Under state law, the Kentucky courts and the Kentucky statute have labeled it. They try to split the difference and call it... Was it one? Is the second one more recent? I thought it was one. The second one is more recent. Bonifacio Aleman applied more recently. Derek Lostutter has not applied. It's just sort of odd that even the lead plaintiff hasn't even applied for voting restoration. Well, the Supreme Court has made clear in City of Lakewood, and every decision in this line of cases going back to Lovell v. Griffin in 1938, that a person bringing a suit under the First Amendment or the discretion doctrine doesn't... I know, but couldn't you just apply and get rulings and then challenge the rulings, as opposed to this sort of odd game about whether this is like a parade permit? Well, the... Is that easier? I mean, you basically got most of the... We think the First Amendment... Sorry, I didn't mean to... I mean, you got most of the relief you wanted from the governor, from the grace of the governor. You have three people left. Only one had even applied at the time when the case was in the district court, I think. And rather than going through this procedural or standing hurdle that we spent all of our time on, they could all apply. They could all get a ruling from the governor. And then if they don't like the governor's ruling, then maybe you have a substantive constitutional challenge then. Well, with respect, we strongly disagree, Your Honor. We think that there's a clear First Amendment violation here because... Well, you don't disagree with what I'm saying. I mean, you disagree with the procedure I laid out, which is just... To me, it seems cleaner. You can do it however you want, obviously. But it seems to me there's a fairly clean route for doing this. Well, that would only address the three individual plaintiffs who are left, and they have a facial challenge for the clear First Amendment violation because of the lack of rules or criteria in this. My point is you only have three plaintiffs left. Counsel, you want to differentiate this from a pardon. But if this is part of a pardon, and your clients lose their voting rights because of the conviction and the way to get it restored if they are not in this automatic group, is to apply for a pardon. And it's very clear that the law permits a limit on voting for convicted felons. So why is this not a pardon case as opposed to a First Amendment voting case? Well, they don't need to obtain... a pardon in order to regain the right to vote in Kentucky. What they need is voting rights restoration, which is just one of the effects of a pardon. Indeed, here it's a partial, partial pardon because normally the application includes the right to hold office. But all that's at issue in this case is arbitrary restoration of the right to vote. Now, the Kentucky law, and we don't challenge this, can disenfranchise all of these people permanently. But it has created an exception to allow selectively, allow people to regain the right to vote. Nothing turns on the state law, the labels that state law assigns to this issue, right? They could call it a pardon or a partial pardon, clemency or not. 40 states in the country are dealing with this exact issue, voting rights restoration, outside of the clemency procedure. There's nothing inherent about voting rights restoration that makes it part of a pardon or part of clemency. Counsel, am I right? I'm sorry, I was just... Go ahead. I just wanted to be clear that your people, the two that applied, they've applied, but there has been no ruling. So, in a sense, you can't always complain about what the governor denied because he can just let it sit, which is what's happening now. Is that correct? Correct, Judge Boggs. Thank you for noting that because it is also the fact that we have a second claim on the lack of reasonable definite time limits, which is considered a species of unbridled discretion. And after you submit this application, the governor could hold the application indefinitely. And indeed, Rob Langdon's petition for restoration has been pending for over a year, I think even as close to two years. So, there's no requirement that it be decided by any time. And that is exactly why this case is in sync with City of Lakewood. The same concerns and principles that obtained in that case, the risk of viewpoint discrimination due to the lack of rules and criteria, as well as the risk of unreviewability, effective unreviewability, because it's submitted into a black box and there's no way to challenge it through an as-applied challenge at a later date. I see that my time has elapsed. I'm sorry. You're saying there's no way to challenge it if it just sits there and there's no action? Your Honor, under City of Lakewood, I'm referring also to the lack of an ability to challenge it as applied because there are no standards, there are no rules or criteria. I mean, one can certainly imagine permitting a case where there is viewpoint discrimination in the application, right? I mean, if a governor only permits registered Democrats and not registered Republicans, then I would think that that would be a different case. But because it's completely within the governor's unfettered discretion and it's totally subjective and there's no requirement for him to, Governor Beshear, to record his reasoning for granting or denying applications, there's no effective way to know what's happening in this black box system. So it is effectively unreviewable and there's no way to challenge it as applied down the line. There are a number of quotes from City of Lakewood dealing with this. Without standards to fetter the licensor's discretion, the difficulties of proof and the case-by-case nature of as-applied challenges render the licensor's action in large measure effectively unreviewable. So that's what I was speaking to, Your Honor. All right. Thank you. Thank you, Your Honor. Any other questions from the panel? No. Great. We really have a rebuttal time. Thank you. Mr. Payne? Thank you, Your Honor. Taylor Payne, Chief Deputy General Counsel, on behalf of the Governor, and may it please the Court. It's clear from the District Court's order that the ruling was on reaching the merits. Where I think the plaintiffs are wrong, and it's suggesting that the District Court sort of commingled a standings and merits ruling, is that ultimately the same reasons for finding that the plaintiffs lack standing in this case are also applicable to the merits had the Court reached the merits of this decision. But to begin, just to provide a little background to the Court on the pardon power in Kentucky, like many other states, convicted felons lose their right to vote under Section 145 of the Kentucky Constitution. Such disenfranchisement has been sanctioned by the United States Supreme Court as being allowed under the 14th Amendment. But also, like in many other states, Kentucky allows the Governor to issue a pardon that may nullify part of that punishment of being convicted of a felony, one of those punishments being losing your right to vote. So why hasn't the Governor done this? I mean, this one application has been waiting. I thought it was maybe even longer than what your friend on the other side said. But one of these applications has been sitting there for quite a long time. Well, I believe the plaintiff suggested that one of the applications had been pending with the Governor's office for about a year. I thought it was longer than a year. But maybe not. There may have been an application submitted to prior Governors, Your Honor, but I'm not sure how long each of these plaintiffs, the two plaintiffs that have applied, have potentially been pending. Okay, well, that's kind of wild to me, because this is like, the case is all about these three people, only two of them applied, and you don't know when the two applied? Let's assume it's two years. Let's assume your friend on the other side is two years, because you can't challenge that, I take it. Why has the Governor sat on one of these applications for two years? Well, I don't think it's a matter of necessarily sitting on the application and not taking any action. Let me rephrase. Why has there not been a final determination on whether to grant the pardon? Well, I think ultimately that would be the Governor has not made up his mind yet whether to grant it or deny this. Well, the Governor took like a month to grant clemency to like a whole bunch of people, and it's taken him two years to consider this one application? Well, Your Honor, we have ultimately thousands of applications that are submitted to us. Do they always take two years? I don't think they always take two years. I think it's very different. It just feels like you guys could make this case, it just feels like you could make this case to some degree go away by either granting or denying the pardon. If you grant it, then I think your friend on the other side would be quite happy with that, and at least one or two of these individuals who apply would be able to vote. If you deny it, then maybe they have a separate challenge about the basis for the denial. But partly due to your own inaction, we're sort of stuck in this middle ground where there's been an application, a lawsuit, no decision. Right. I understand that, Your Honor. What I would say, you know, when the governor initially restored over 140,000 former convicted felons, convicted felons' right to vote, you know, that the district court originally held that is what that did moot this case. Now, this court reversed that, essentially saying that that EO didn't apply to these plaintiffs because ultimately what it didn't act as was a denial for these plaintiffs. But what's sort of ironic, or I think challenging for the plaintiffs here, is that is to their benefit that the governor retains the right to continually consider their pardons. I mean, you never act on it. I mean, I just couldn't understand why you're taking this long. It would make the case either go away or crystallize. And it's almost, I mean, are you like wanting us to rule rather than you doing? I mean, this is really a direction to the governor. This is the governor's power. It's a state matter. It almost feels like you're dragging your feet, so we'll rule one way or the other. But you could make the case go away, or at least most of the case go away. Not at all, Your Honor. And, you know, I think ultimately that's just never been a consideration of this office is to go ahead and rule on these three so that this case will go away. But you're the governor's legal counsel. I think usually, at least in Ohio, the legal counsel is the one who considers the pardons. So it's just a surprising fact to me, but I'll let you move on. Well, thank you, Your Honor. I think, you know, just to conclude that point, I do think in many ways the governor's original action, establishing executive order of his parameters for automatic restoration, I know this court disagreed that it mooted that case, but ultimately what it did was the governor made a decision on that point as to what his criteria was going to be. If it would have been a denial to these plaintiffs, I do think this case would have been moot, and I think this court would have agreed with the district court at that time. But again, it remains to the plaintiff's benefit that the governor can consider their application in one period of time, and rather than saying it's a flat-out denial and I will never consider your pardon again, that he's saying I'm not granting it now when I'm granting these others, but I retain the power to reconsider this in the future should your conditions change, should you become a more worthy applicant to this office for the use of that pardon power. Again, back to the standing issue in this case. Are there any criteria for deciding which of those people who don't get it automatically are worthy? No, Your Honor. Under Kentucky law, that is left to each governor who holds the office to ultimately subjectively determine who they think is worthy of that. Yeah, I'm just curious. Does the governor claim there are criteria? No, but this governor did establish criteria early in his term that applied to the disenfranchised convicted felons. Well, when you say he established that, are you talking about the order that says when you can automatically be restored? Yes, it was an executive order early in the first few days. No, I wasn't asking about that. I mean, like you refer to a candidate as not worthy now, but maybe worthy in the future. Is there any internal definition of worthy? No, Your Honor. I think that's something that for each governor in any state that would consider. They potentially have criteria of what they're looking for in an applicant that they think warrants the use of this extraordinary power. And for an applicant who, you know, someone that it's, this is just a hypothetical example here, but whether that's hours of community service logged or something to that effect, an applicant, you know, two years in has a much better chance of demonstrating that community service than if it was required to be decided within a month or a certain time frame of the governor receiving that application. And applicants are welcome to routinely update this office. Let's say, would you agree that if the governor were granting these limited pardons on an impermissible basis, that would be unconstitutional? Not necessarily, Your Honor, but I would concede that justices of the Supreme Court have recognized, I don't believe the majority has ever said this, that the use of the pardon power to, could in some ways be in violation of the Equal Protection Clause. But again, that's not the case here. There's been no allegation that that's, it's ever been used in Kentucky to infringe on anyone's First Amendment rights, let alone their equal protection rights. How would one go about finding out if that's the case, or establishing that that's the case if it is the case? Well, I think what a plaintiff could do is look at a governor's entire history of pardons. Obviously, they would have to engage in discovery and attempt to learn about what the motivations were and the intent of the pardons. It would be a difficult case, Your Honor, but the Supreme Court has, I think, in some ways suggested the pardon power after its use could be challenged under those terms. I think, you know, in another situation, certainly the pardon power, to the extent it was used to grant political favors or something like that, there could be, potentially, the criminal system, I think, could be involved in providing a check on the governor's power there. How do you respond to the black box argument? Well, you know, I mean, that is, the Supreme Court has essentially said that the types of procedural processes that the plaintiffs are asking here, certainly they've said this in the equal protection claim, there is no right to a timeliness on the decision and there is no right to impose outside procedural protections on these applications once they're received. The Supreme Court has held essentially a governor never has to act on a pardon application. And largely that is because, especially with the right to vote, these convicted felons have lost that right. They no longer have an interest in their right to vote. This court and the Supreme Court have said, once you are constitutionally disenfranchised from the exercise of that vote, this court, that there is no fundamental right left to assert by the plaintiffs. And I would just briefly, I believe the time has stopped on my computer, so I don't know how much time I have left. I think it's stopped for both sides, so we're just being very generous today. Okay, thank you, Your Honor. You know, I would just briefly in closing like to address the licensing cases that the plaintiff has admitted, conceded that would require this court to adopt that reasoning. As the district court correctly held, they're wholly different animals that we're discussing here. The district court essentially looked at it in just what is a license and what is a pardon. A license is obviously granting permission to someone to exercise a right that they already have, whereas a pardon is a retroactive application nullifying a punishment. But here, again, as I've said before, the plaintiffs have lost any fundamental or constitutional right that may exist under the First Amendment or under the Equal Protection Clause. I understand these are only First Amendment claims, but they've lost any constitutional or fundamental right to assert. Therefore, there is no process of the governor licensing them to exercise those rights. They are gone. But the bigger problem with the comparison to the licensing cases is those hinge completely on the ordinance being challenged, being a prior restraint on the expression of the individual seeking the license and the threat, the risk that those seeking the license will self-censor their own speech going forward. So in the city of Lakewood case, it was an annual permit in order to allow media outlets to publish their newspapers and put them in certain news racks around the city. The court held that that hypothetical risk of having a license denied was enough of an actual injury to allow the plaintiffs standing to assert a facial challenge in that case because of the prior restraints risk of self-censorship. So ultimately, what they're saying is the mayor of the city, the city council could monitor the expression of a newspaper, ultimately decide they didn't like a negative article written about the council or the mayor, and then deny them the ability to put that in news racks throughout the city, deny them a license to do that. The risk there is that the media outlet then will not run the critical story on the mayor or the local government in hopes that that won't deter the city or the mayor from granting their right to publish in the future. But none of those issues are present in the case of a pardon. Here, the pardon power is not what is the prior restraint. The prior restraint, if anything, if it is a restraint on their free expression of speech, is their conviction, convicted felony. It's the Kentucky Constitution that deprives them of their right to vote the moment they become convicted felons. Again, that power has been upheld time and time again by the Supreme Court as constitutional. But again, the self-censorship is not even here. Plaintiffs have lost their right to vote. They can't self-censor their right to vote while their pardon is pending before the governor. So none of the same issues of why the Supreme Court allows a facial challenge to these licensing schemes exist in the context of the use of the pardon power. So again, because of that, the district court ultimately found the plaintiffs lack standing. Those arguments of this would also be applicable to the merits should the court reach that decision. If there are no other questions, your honors, I, we will wrap up. Any questions from the panel? Nope. Thank you. Okay. Thank you, Mr. Payne. Mr. Sherman, you have three minutes, depending on whether we stop the clock or not. Perhaps more. Thank you, your honor. Well, this court has heard it directly from Governor Beshear's counsel. That's as clear an unfettered discretion violation as this court is likely to ever see. A person submits an application to engage in political expression once again, and the governor will decide whether they are quote-unquote worthy. There are no rules, no criteria, admittedly. There is no specific content whatsoever to that determination. Just one single official with sole and exclusive authority to determine whether that person is worthy or not. Isn't that counsel? I mean, you know, we have 500 years of history, not clemency and party powers on things that are frankly important than voting. Voting is very important, but being left in prison, you know, think about, you know, the famous case of Debs, the socialist candidate for president who stayed in prison because Woodrow Wilson didn't like him. And when Harding came in, although he had his problems, he was perfectly happy to let Debs out with no criteria. I mean, isn't what you really have is a complete attack on the history of the pardon power. We think not, your honor, because we're not talking about physical liberty here. We're talking about a First Amendment protected right. Isn't that even worse? Think about Debs, a candidate whose right to be out campaigning is in the sole discretion of the people that may be his opponents. We think not, your honor. The First Amendment has enjoyed at the Supreme Court the highest protection. That's the reason that the First Amendment unfettered discretion doctrine operates as a vaccination or an inoculation against viewpoint discrimination. And unlike with the 14th Amendment, where you need to prove that discrimination has already occurred, here you can bring a facial challenge. I think a number of the questions today have suggested implicitly that our clients are only able to bring as applied challenges, but that's not so under Forsyth County and many of these other cases, city of Lakewood, a facial challenge is available. Forsyth County, for its part, says facial attacks on the discretion granted the decision maker are not dependent on the facts surrounding any particular permit decision. The success of that facial challenge rests not on whether the administrator has... The First Amendment is a case of chill under the First Amendment, right? It's a First Amendment case? Correct, your honor. Yeah, so I mean, the whole ball waxes whether this is actually a First Amendment question that you're raising. So suppose, I mean, we were thinking about other possibilities that once you're a felon, you're disenfranchised of other rights. One, say, is jury service. I mean, if we think voting is expressive, why isn't serving on a jury also expressive in some ways? And that means that you could also have a facial challenge to the prohibition on serving on juries. And I don't know what the other ramifications are being a felon, but this feels like a bit of a slippery slope. Uh, with respect, we disagree, your honor. There's no precedent whatsoever suggesting that serving on a jury is in any way implicates the First Amendment, whereas there is decades and decades, 85 years here going back, at least for voting, going back to Williams v. Rhodes in 1968, suggesting, saying that voters have expressive First Amendment interest in casting their ballots. I'd note also, going back to the political expression question, in the aggregate, voting is communicative. It speaks. Even if it's a secret ballot, those voters communicate by the people they vote for, the candidates they vote for, the parties they vote for, and also the causes they vote for through ballot initiatives. I do want to... I think your time is up. Does anyone else have any questions? Look, if you have one last point you want to make, go ahead. I did want to just really quickly address the purported functional differences. Voting rights restoration is what the district court should have been comparing to licensing, not pardons as a whole. Pardons are not at issue here. We're not attacking the pardon power. We're simply trying to constrain voting rights restoration, which is being dealt with arbitrarily. And the three purported differences that this is a one-time act of clemency, it's not. There could be repeat encounters if voting rights restoration is denied one or more times. Revocability, there's no authority in the First Amendment law that revocability is an indispensable feature for licensing. And three, this notion of retrospective effect, right? Voting rights restoration has no retrospective effect. It's all perspective. You can't get back the elections you missed. You can only have license to vote in the future. Thank you. Unless there's other questions, I've been generous with our time. Thank you to both of you for your arguments, and we will take the case under consideration.